UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN R. McCOOL, | : | CIVIL ACTION NO. 4:CV-11-1038 |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| SNYDER COUNTY AND | : | **FILED** |
| NORTHUMBERLAND COUNTY, | : | **SCRANTON** |
| | : | |
| Defendants | : | JUN 2 7 2014 |

PER_____

DEPUTY CLERK

## MEMORANDUM

### Background

On May 31, 2011, John McCool, an inmate confined in the State

Correctional Institution, Coal Township ("SCI-Coal Township"), Pennsylvania,

filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1,

complaint).  The named Defendants are Snyder County and Northumberland

County.  Id.  He raises claims arising out of alleged violations of the Interstate

Agreement on Detainer's Act ("IAD") that took place between 1981 and 1989.  Id.

For relief, he seeks compensatory damages.  Id.

Presently pending are Defendants' motions to dismiss the complaint.  (Docs.

4, 9). The motions are fully briefed and are ripe for disposition.  For the reasons set

forth below, the motions to dismiss will be granted.

**Discussion**

I.     **Standard of Review**

       **Motion to Dismiss**

Rule 12(b) (6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the ... claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the

complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130–31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (1009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U .S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).  "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such

an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citation omitted). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).

## II.  Statement of Facts

The following statement of facts has been derived from Plaintiff's complaint, supporting exhibits, and matters in which the Court has taken judicial notice. See (Docs. 1, 28).[1]

On May 5, 1980, McCool was indicted by an Ontario County grand jury and charged with robbery in the first degree, reckless endangerment in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree in violation of the New York Penal Law. McCool v. New York State, 29 F. Supp. 2d 151 (W.D. N.Y. 1998). Following a jury trial,

---

1.   In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6). Oshiver, 38 F.3d at 1385 n.2; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990); see also Lloyd v. U.S., No. 99 C 3347, 1999 WL 759375, *1 (N.D. Ill. Sept. 3, 1999) ("As the court may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment, Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994), the court will take judicial notice of court records in conducting its initial review under § 1915A.").

McCool was convicted of robbery in the first degree. Id. On November 12, 1980, McCool was sentenced as a persistent felony offender to an indeterminate term of fifteen (15) years to life for that conviction. Id.

On, or about, February 25, 1981, Plaintiff was transferred to Pennsylvania pursuant to the Interstate Agreement on Detainers for trials in Northumberland and Snyder Counties. See (Doc. 28-1 at 4, Prosecutor's Acceptance of Temporary Custody Offered in Connection with another Prosecutor's Request for Disposition of a Detainer).

On June 10, 1981, in the Court of Common Pleas of Northumberland County, Plaintiff was found guilty of kidnapping, felonious restraint, rape, involuntary deviate sexual intercourse, indecent assault, robbery, and unauthorized use of a motor vehicle. (Doc. 28-1 at 7, Prosecutor's Report on Disposition of Charges). He was sentenced to not less than thirty (30) years and not more than sixty (60) years imprisonment, to begin at the expiration of, and run consecutive to, the sentence imposed in Ontario County, Sate of New York. Id. On the same date, in the Court of Common Pleas of Snyder County, Plaintiff was found guilty of rape, kidnapping, and involuntary deviate sexual intercourse. (Doc. 28-1 at 9, Prosecutor's Report of Disposition of Charges). He was sentenced to not less than twenty-five (25) years and not more than fifty (50) years imprisonment. Id.

5

On June 11, 1981, Plaintiff was returned to the State of New York. (Doc. 28 at 79, Return Information). On June 11, and June 16, 1981, Plaintiff's Pennsylvania convictions and sentences were lodged as detainers against him. See (Doc. 28-1 at 10, 12, letters from the Auburn New York Correctional Facility confirming Pennsylvania's detainers).

On March 25, 1983, the Pennsylvania Superior Court vacated and remanded Plaintiff's Northumberland County conviction and sentence to the Court for the sole purpose of affording McCool a hearing on his allegation of ineffective assistance of trial counsel. (Doc. 28-1 at 15, Judgment).

Efforts were undertaken by both the Commonwealth and McCool to arrange his return to Pennsylvania, which efforts proved to no avail due to the position of officials at the New York prison where McCool was incarcerated, that the Interstate Agreement on Detainers Act did not apply.[2] See (Doc. 28-1 at 42, Commonwealth's Motion to Hold Hearing with or without Presence of Defendant).

Efforts were then made by the Commonwealth to extradite McCool under the Criminal Extradition Act; but, Commonwealth attorneys were advised by officials of the Pennsylvania's Governor's Office that the Extradition Act did not apply

---

2.   To this end, by Order dated February 27, 1989, the New York Supreme Court granted McCool's application for writ of habeas corpus, and dismissed the detainer application filed by Northumberland County. See (Doc. 28-1 at 35, 36, Order).

because McCool was not a fugitive as that term is used in the Act, and that the Interstate Agreement on Detainers Act applied. Id.

On October 4, 1988, the Commonwealth sent a "Form V" request under the IAD for custody of McCool so that he would be available at the hearing he requested on his claim of ineffective assistance of his trial counsel. Id. Had McCool agreed to sign the appropriate form, Form II, voluntarily agreeing to his return to Pennsylvania under the IAD, New York State Officials would have given his custody to the Pennsylvania Officials. Id. McCool, however, apparently had had a change of heart since 1985, and refused to sign the form and challenged the Commonwealth's authority to seek or receive his custody for return to Pennsylvania. Id.

On December 11, 1989, New York Governor, Mario Cuomo, honored the requisition of Pennsylvania Governor, Robert Casey, for the surrender of McCool. See (Doc. 28-1 at 51-56, Agreement Between the Governor of the Commonwealth of Pennsylvania and the Governor of the State of New York).

By Order dated May 29, 1990, the Northumberland County Court of Common Pleas found that McCool was not denied effective assistance of counsel and set his resentencing for May 30, 1990. (Doc. 28-1 at 59, Order).

7

On June 18, 1990, the New York Department of Corrections acknowledged and lodged Northumberland County's Commitment Detainer against McCool, notifying them that his earliest release date would be January, 1995. (Doc. 28-1 at 60, June 18, 1990 letter).

By Order dated September 21, 1998, the Northumberland County Court of Common Pleas dismissed McCool's Post Conviction Relief Act Petition as untimely. (Doc. 28-2 at 17, Pa. R. Crim. P. 1507 Notice). The Court noted that the Pennsylvania Superior Court affirmed McCool's 1990 conviction, no appeal was sought in the Pennsylvania Supreme Court, and McCool failed to allege any exceptions to the one-year statute of limitations. Id.

This Court takes judicial notice that McCool has challenged his underlying convictions, as well as the alleged violations of the IAD, in the following actions: McCool v. Kyler, Civil No. 4:00-1418 (M.D. Pa. Feb. 16, 2001) (dismissing, for failing to exhaust, McCool's habeas corpus action, claiming that (1) his conviction was obtained in violation of the Interstate Agreement on Detainers; (2) he was denied effective assistance of counsel when trial counsel failed to obtain exculpatory evidence for trial and failed to act in light of the discovery of exculpatory evidence subsequent to trial; (3) he was denied the right to appeal; and (4) Snyder County failed to bring him to trial in a timely fashion). McCool v.

Snyder County, Civil No. 4:01-cv-0731 (M.D. Pa. Dec. 14, 2001) (holding that Plaintiff's civil rights action pursuant to 42 U.S.C. § 1983 be dismissed against ten of the twelve named Defendants for Plaintiff's failure to comply with an Order to respond to the Defendants' pending motions to dismiss, and the claims against the remaining two Defendants, Apfelbaum and Klein, be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because McCool failed to state a claim against them upon which relief could be granted); McCool v. Mechling, Civil No. 4:02-cv-0337 (M.D. Pa. Dec. 1, 2003) (dismissing McCool's habeas corpus petition challenging his Snyder County conviction on the basis that his claims were procedurally defaulted and McCool did not present any reason to excuse the default); McCool v. Mechling, Civil No. 4:02-cv-0338 (M.D. Pa. Nov. 17, 2003 )(dismissing, as untimely, McCool's habeas corpus petition contending that Pennsylvania failed to comply with the Interstate Agreement on Detainers); and McCool v. Mechling, Civil No. 4:04-cv-0992 (M.D. Pa. June 7, 2004) (dismissing McCool's habeas corpus action challenging Pennsylvania's compliance with the Interstate Agreement on Detainers as an abuse of the writ and as a successive petition because the court had already twice ruled on the same issue).

In addition, McCool has filed innumerable collateral attacks of his criminal convictions in Pennsylvania state court. In the most recent state court decision,

filed on October 21, 2013, the Pennsylvania Superior Court affirmed the state

court's denial of McCool's habeas corpus petition, finding the following:

> On July 1, 1996, McCool filed his first Petition for relief under the
> Post Conviction Relief Act ("PCRA"),[3] after which appointed counsel
> filed an amended Petition. In that Petition, McCool alleged that (a) he
> was deprived of due process under the Interstate Agreement on
> Detainers Act ("IAD"), 42 Pa. C.S.A. § 9101 *et seq.*; (b) a new trial
> was warranted based upon after-discovered facts regarding the
> manufacture of black duct tape; and (c) that Attorney Wilcox rendered
> ineffective assistance by failing to file a brief in support of McCool's
> post-trial Motions.
>
> On February 11, 1997, the PCRA court denied McCool relief on his
> claim pertaining to the IAD, but concluded that Attorney Wilcox had
> rendered ineffective assistance by failing to file a brief supporting
> McCool's post-trial Motions. McCool, with new counsel, filed
> Motions for a new trial and for arrest of judgment. The trial court
> denied McCool's post-trial Motions and re-imposed its judgment of
> sentence on June 10, 1981. On July 29, 1998, this Court affirmed
> McCool's judgment of sentence, after which the Pennsylvania
> Supreme Court denied allowance of appeal. Commonwealth v.
> McCool, 724 A.2d 957 (Pa. Super. 1998) (unpublished memorandum),
> appeal denied, 751 A.2d 187 (Pa. 2000). In his *nunc pro tunc* direct
> appeal, McCool raised no claim regarding the IAD.
>
> McCool timely filed a PCRA Petition on March 21, 2001. After an
> evidentiary hearing, the PCRA court denied McCool's Petition. On
> appeal, McCool claimed that a new trial was warranted based upon his
> improper transfer from New York to Pennsylvania under the IAD.
> Commonwealth v. McCool, No. 1620 MDA 2002 (Pa. Super. filed
> July 16, 2001), slip opinion at 4. This Court concluded that McCool
> had waived his IAD issue by failing to raise it on direct appeal. Id.
> This Court further rejected McCool's ineffectiveness claim based

---

3.   42 Pa.C.S.A. §§ 9541-9546.

upon direct appeal counsel's failure to raise the IAD claim on direct appeal. Id. at 4-5.

In the instant case, McCool sought habeas corpus relief based upon an improper transfer under the IAD. However, "the PCRA subsumes all forms of collateral relief, including habeas corpus, to the extent a remedy is available under such enactment."[4] Commonwealth v. West, 938 A.2d 1034, 1043 (Pa. 2007). As McCool's claim was initially cognizable under the PCRA, it must be addressed under the rubric of the PCRA.

Initially, we must determine whether McCool timely filed his Petition for relief. A PCRA petition must be filed within one year of the date the petitioner's judgment of sentence became final. 42 Pa.C.S.A. § 9545(b)(3). The one-year limitation is jurisdictional and a trial court has no power to address the substantive merits of an untimely petition. Commonwealth v. Abu-Jamal, 833 A.2d 719, 723-24 (Pa. 2003); Commonwealth v. Gamboa-Taylor, 753 A.2d 780, 783 (Pa. 2000).

McCool's Petition, filed over ten years after his judgment of sentence became final, is untimely on its face. The PCRA provides exceptions to its timeliness requirement based on newly discovered facts, interference by a government official, and a newly recognized constitutional right. 42 Pa.C.S.A. § 9545(b)(1)(I)-(iii). A petition asserting one of these exceptions must also establish that the exception was raised within sixty days of the date the claim could have been first presented. 42 Pa.C.S.A. § 9545(b)(2).

To the extent that McCool attempts to claim an exception to the timeliness requirements, as provided at 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii), McCool did not raise the claim within 60 days of the date on which the claims could have been first presented. "As such, when a

---

4.   Where a defendant's claims "are cognizable under the PCRA, the common law and statutory remedies now subsumed by the PCRA are not separately available to defendant." Commonwealth v. Voss, 838 A.2d 795, 799 (Pa. Super. 2003) (citation omitted).

PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the trial court has no power to address the substantive merits of a petitioner's PCRA claims." Gamboa -Taylor, 753 A.2d at 783.  On this basis, we cannot grant McCool relief on his PCRA petition.

McCool v. Varano, No. 319 MDA 2012 (non-precedential opinion of Pennsylvania Superior Court).

On May 31, 2011, Plaintiff filed the instant action, in which he states that "this is a civil action seeking damages against Defendants for committing acts, under color of law, which deprived Plaintiff of rights secured under the Constitution and Laws of the United States; for conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection of Laws; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff." (Doc. 1, complaint).  Specifically, he states that "on June 10, 1981, following Plaintiff's temporary custody transfer to Pennsylvania, pursuant to Defendant Snyder County's Prosecutor's Request for Temporary Custody under the Interstate Agreement on Detainers Act (IAD), Defendant Northumberland County returned Plaintiff to the State of New York before Plaintiff's trials in Pennsylvania were finalized, in **violation of the Interstate Agreement on Detainers Act's (IAD) No-Return Policy**." (Doc. 1, complaint at 3) (emphasis in original).

12

Plaintiff claims that "on October 4, 1988, Defendant Northumberland County attempted to take temporary custody of the Plaintiff pursuant to a second filing of a Prosecutor's Request for Temporary Custody under the IAD, ignoring the mandatory sanctions on the Interstate Agreement on Detainers Act's (IAD) No-Return-Policy it violated in 1981." Id.

On February 27, 1989, "after Plaintiff's involuntary commitment proceeding terminated in Plaintiff's favor, a **New York State Habeas Corpus Judge dismissed Pennsylvania's Commitment Detainers pursuant to the Interstate Agreement on Detainers Act's (IAD) Dismissal Clause.**" Id. (emphasis in original).

On May 31, 2011, Plaintiff filed the instant action in which he claims that he **"is currently being deprived of his liberty pursuant to the invalidated commitment detainers dismissed pursuant to the Interstate Agreement on Detainers Act's (IAD) No-Return-Policy's Dismissal Clause."** Id. (emphasis in original). He further claims that "as a result of their unlawful and malicious detention and confinement of Plaintiff, Defendants Snyder County and Northumberland County intentionally or with deliberate indifference and callous disregard of Plaintiff's rights deprived Plaintiff of his liberty without Due Process of Law and deprived him of Equal Protection of the Laws, in **violation of the Fifth**

13

and Fourteenth Amendments of the Constitution of the United States and 42

U.S.C. Section 1983, 28 U.S.C. Section 1343(3)." Id. (emphasis in original).

## III.   Discussion

### A.   McCool cannot prevail on a malicious prosecution claim.

A plaintiff, in order to state a viable § 1983 claim, must plead two essential

elements:  1) that the conduct complained of was committed by a person acting

under color of state law, and 2) that said conduct deprived the plaintiff of a right,

privilege, or immunity secured by the Constitution or laws of the United States.

Groman  v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by

Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

It is well-settled that an essential element of a civil rights false arrest or

imprisonment claim is that the underlying criminal case must have been terminated

in favor of the civil rights claimant.  Therefore, where, as here, the civil rights

plaintiff brings a malicious prosecution, or false arrest claim based upon a state

case that resulted in a conviction, the plaintiff's claim fails as a matter of law.  The

United States Court of Appeals for the Third Circuit has aptly observed in this

regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983
> creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477,
> 483(1994) (quoting Memphis Community School Dist. v. Stachura,

14

477 U.S. 299, 305(1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." <u>Heck</u>, 512 U.S. at 483 (quoting <u>Carey v. Piphus</u>, 435 U.S. 247, 257–58 (1978)). The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." <u>Heck</u>, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in <u>Heck</u> had not successfully challenged his criminal conviction. <u>Id</u>.

<u>Hector v. Watt</u>, 235 F.3d 154, 155–156 (3d Cir. 2000).

Thus, it is a legal prerequisite to a civil rights claim in this setting based upon allegations of false arrest or malicious prosecution that the plaintiff show that the criminal proceedings have terminated in his favor. Indeed, it is well-settled that "[t]o prove malicious prosecution under .,., a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) **the criminal proceeding ended in plaintiff's favor**; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to

15

justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (emphasis added). As the courts have observed:

> The purpose of the favorable termination requirement is to avoid "the possibility of the claimant ... succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Heck v. Humphrey, 512 U.S. 477 (1994) (alteration in original) (internal quotation marks omitted). Consistent with this purpose, we have held that a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element. Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002): see also Gilles v. Davis, 427 F.3d 197, 211 (3d Cir. 2005) (holding that expungement under the Accelerated Rehabilitative Disposition program was not a favorable termination because the program "imposes several burdens upon the criminal defendant not consistent with innocence"). Accordingly, a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused.

Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009).

As a convicted-felon, McCool cannot avoid the application of this favorable termination rule as a bar to a malicious prosecution claim by merely citing the fact that his convictions are invalid because "the New York State Habeas Corpus Judge dismissed Pennsylvania's Commitment Detainers pursuant to the Interstate

Agreement on Detainers Act's (IAD) Dismissal Clause".  Rather, in order to avoid application of the favorable termination rule to him, it is incumbent upon McCool to show that, "upon examination of the entire criminal proceeding, the judgment must indicate the Plaintiff's innocence of the alleged misconduct underlying the offenses charged." Kossler v. Crisanti, 564 F.3d 181, 188 (3d Cir. 2009). This requirement is grounded in bedrock principles of "comity, and federalism all [of which] counsel a collateral federal court to stay its hand before undoing the original state court's proceeding. See, e.g., Heck, 512 U.S. at 484–85; Osborne v. Dist. Attorney's Office, 423 F.3d 1050, 1054–55 (9th Cir. 2005); Olsen v. Correiro, 189 F.3d 52, 69–70 (1st Cir. 1999)." Kossler, 564 F.3d at 189–90.

In this case, it is more than evident that McCool's prior state criminal prosecutions did not terminate favorably for him, in a way which "indicate[d] the plaintiff's innocence of the alleged misconduct underlying the offenses charged" Kossler v. Crisanti, 564 F.3d 181, 188 (3d Cir. 2009), as McCool was convicted of the charges against him in both Snyder and Northumberland Counties.  Since "one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor", Hector v. Watt, 235 F.3d 154, 155–156 (3d Cir. 2000), the immutable fact of McCool's convictions of the charges against

17

him defeat any federal civil rights claims based upon false arrest or malicious prosecution in this case, and compels dismissal of the claim as a matter of law.

**B.     McCool's action is barred by the statute of limitations.**

Even accepting McCool's invitation to treat the New York state court's dismissal of Pennsylvania's Commitment Detainers as a favorable termination, this lawsuit would still be barred on another, independent ground, the statute of limitations.  Entirely aside from these substantive constitutional considerations, it is also well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 266–67 (1985).  In Pennsylvania, the statute of limitations for a personal injury action is two years.  See 42 Pa. C.S. § 5524.  A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action.  Sameric Corp. of Delaware. Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations.  For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the

18

limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F.2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold, 232 F.3d 360, 266–68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec., Co., 45 F.3d 744, 754 (3d Cir. 1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991). In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter- whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency- whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence- whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n.9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir .1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001).

Here, McCool requests this Court to entertain a federal civil rights lawsuit filed in May, 2011, arising out of a state criminal proceedings which took place between June 10, 1981 and 1989.  To the extent that his earlier prosecutions were an unconstitutionally malicious proceeding, as McCool now alleges, the invalid and malicious aspects of his case would have been evident at the time of his convictions and sentencing, in 1981 on the Snyder County conviction, and in 1998, after the Pennsylvania Supreme Court's denial of allowance of appeal of the affirmance of McCool's May 30, 1990 resentencing, on his Northumberland County conviction. Therefore, this complaint, which was filed more than a decade after these events, would plainly be time-barred under the statute of limitations. Nor can McCool save these time-barred claims by resort to the continuing violation theory.  The complaint speaks unambiguously to this issue when it alleges that Plaintiff suffered harm as a result of a malicious prosecution in 1981 through 1989. In light of this admission by McCool, the plaintiff plainly was on notice of both his injury and its cause, at the very latest, in 1998.  Therefore, there clearly are no grounds for tolling the statute of limitations beyond 1998 on a continuing offense theory, and his claims are time-barred.

**C.     McCool's claims are barred by the doctrine of <u>Res Judicata</u>.**

The preclusive effect given to prior adjudications under the doctrine of <u>res judicata</u> "is not a mere matter of 'practice or procedure' but 'a rule of fundamental and substantial justice.'" <u>EEOC v. U.S. Steel Corp.</u>, 921 F.2d 489, 492 (3d Cir. 1990) (quoting <u>Hart Steel Co. v. Railroad Supply Co.</u>, 244 U.S. 294, 299 (1917). "<u>Res judicata</u> avoids 'the expense and vexation attending multiple law suits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" <u>Id</u>. (quoting <u>Montana v. United States</u>, 440 U.S. 147, 153-54 (1979)).

<u>Res judicata</u> comprehends both "claim preclusion" and "issue preclusion." <u>Migra v. Warren City Sch. Dist. Bd. Of Educ.</u>, 465 U.S. 75, 77 n.1 (1984). Claim preclusion "applies to all claims actually brought or which could have been brought in a prior action regardless of whether they were asserted or determined in the prior proceeding." <u>Inofast Mfg., Inc. v. Bardsley</u>, 103 F. Supp. 2d 847, 849 (E.D. Pa. 2000), <u>aff'd mem.</u>, 265 F.3d 1055 (3d Cir. 2001). Issue preclusion, also known as collateral estoppel, "bars relitigation only of an issue identical to that adjudication in the prior action." <u>Bradley v. Pittsburgh Bd. Of Educ.</u>, 913 F.2d 1064, 1070 (3d Cir. 1990). The party asserting claim preclusion must establish "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." <u>Inofast</u>, 103 F. Supp.

2d at 849; see also Napier v. Thirty or More Unidentified Federal Agents, 855 F.2d 1080, 1086 (3d Cir. 1988). Each requirement for claim preclusion is present in the instant case. Plaintiff has had previous opportunities to litigate his claims regarding Pennsylvania's alleged violation of the Interstate Agreement on Detainer's Act. The proper forum for appealing these claims is not to again raise them in this Court. The rule is that "[r]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." McWilliams v. Colorado, 121 F.3d 573, 574 (10th Cir. 1997) (quotation marks and alteration omitted). Here, the instant suit is clearly repetitious of prior actions filed by McCool, as set forth supra. As such, the present suit should be dismissed as malicious pursuant to 28 U.S.C. § 1915.

## IV.   Conclusion

For the reasons stated above, the Corrections Defendants' motions to dismiss, (Docs. 4, 9), will be granted. A separate Order will be issued.

Dated: June 27, 2014

_____
**United States District Judge**

22